IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| JOSEPH M. STILL BURN CENTERS, INC., <br><br>  Plaintiff, <br><br> v. <br><br> DEREK M. CULNAN, M.D.; MISSISSIPPI BURN, HAND, AND RECONSTRUCTION CENTERS PC; and MAGNOLIA MEDICAL MANAGEMENT LLC, <br><br>  Defendants. | Civil Action No.: _____ |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

NOW COMES Plaintiff, Joseph M. Still Burn Centers, Inc. ("JMS"), by and through its attorneys, and hereby files its Verified Complaint for Injunctive Relief against Defendants Derek Culnan, M.D. ("Culnan"), Mississippi Burn, Hand, and Reconstruction Centers, P.C. ("Mississippi Burn"), and Magnolia Medical Management LLC ("MMM"). JMS will suffer immediate and irreparable injury unless it is granted injunctive relief against Defendants.

### Nature of the Case

1. This case involves Defendant Culnan's deliberate and systematic breach of his Employment Agreement with Plaintiff, attached hereto as Pl.'s Ex. 1, both before and after the termination of the agreement.

2. Defendant Culnan, a former employee of JMS, began actively making plans to compete with JMS while still employed with JMS pursuant to the Employment Agreement between the parties.

1

3.  Culnan formed Defendant(s) Mississippi Burn and/or MMM in order to unfairly compete with JMS, by using JMS's confidential information and pirating JMS employees.

4.  Both before and after the termination of his employment with JMS, Defendant Culnan successfully solicited JMS's employees to leave JMS in order to work for Defendants. Defendants' solicitation of JMS employees was (and is) a direct and material breach of the Employment Agreement and entitles JMS to injunctive relief.

4.  Upon information and belief, Defendant Culnan, either directly or indirectly through JMS employees he intended to hire away from JMS, has also solicited JMS patients in violation of his Employment Agreement.

5.  Upon information and belief, Defendant Culnan, either directly or indirectly through JMS employees he intended to hire away from JMS, has obtained confidential JMS data and/or materials that Defendants have used or intend to use to compete with JMS.

### Parties, Jurisdiction, and Venue

6.  Plaintiff is a Georgia professional corporation with its principal place of business located in Augusta, Richmond County, Georgia.

7.  Defendant Culnan is a Mississippi resident who may be served with process at his principal residence address located at 325 Lakeshire Pkwy, Canton, MS 39046.

8.  Defendant Mississippi Burn is a Mississippi professional corporation which may be served via its registered agent, Genevieve Culnan, at 325 Lakeshire Pkwy, Canton, MS 39046.

9.  Defendant MMM is a Mississippi limited liability company which may be served via its registered agent, United States Corporation Agents, Inc., at 4780 I-55 N, Suite 100, Jackson, MS 39211.

10. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity amongst the parties and the amount in controversy exceeds $75,000.

11. This Court has personal jurisdiction because the Employment Agreement giving rise to this suit was entered into in Georgia, Defendants' breaches of the Agreement will cause harm in Georgia, and the parties to the Agreement expressly submitted to the jurisdiction of this Court for resolving disputes arising out of the Agreement. (Pl.'s Ex. 1 at ¶ 21.)

12. Venue is likewise proper in this Court because the parties to the Employment Agreement have submitted to the exclusive venue of state or federal courts located in Richmond County, Georgia for venue of any disputes arising under the Agreement. (Pl.'s Ex. 1 at ¶ 21.)

## Facts

13. JMS is a renowned specialized burn medical practice headquartered in Augusta, Georgia with additional locations in Atlanta, Georgia; Valdosta, Georgia; Jackson, Mississippi; and Charleston, South Carolina.

14. JMS has developed a regional brand and reputation over more than a decade through its provision of world-class burn and wound care at multiple locations across the southeastern United States. JMS is the largest burn specialty practice in the United States and the third largest in the world.

15. JMS has had continuous operations in Jackson, Mississippi for over fifteen years, during which time it has been primarily affiliated with Merit Health Central hospital in Jackson.

16. JMS's location in Jackson, MS, has averaged more than $5 million in gross revenue for the preceding three years.

## JMS's Investment of Resources Into its Business

17. JMS devotes significant resources and capital to the identification, recruitment, hiring, and retention of its employees, including physicians, midlevel or Advanced Practice providers (including nurse practitioners ("NP") and physician's assistants ("PA"), also "midlevels"), and other critical employees.

18. As a medical service provider, JMS's employees, and especially its midlevels, are some of its most important assets.

19. In recognition of this fact, JMS requires that its employees must devote their entire professional efforts to JMS during the term(s) of their employment. (Pl.'s Ex. 1 at ¶ 5(a).)

20. JMS also requires its physicians, like Culnan, to agree not to solicit or hire away JMS employees if they leave JMS's employ. (Pl.'s Ex. 1 at ¶ 27(c).)

21. JMS physicians are also prohibited from interfering with JMS's contractual relationships with health systems, hospitals, and payors both during their employment and for two years after termination of employment. (Pl.'s Ex. 1 at 27(d).)

22. JMS maintains the confidentiality of its hiring protocols, employee compensation, and other available benefits and does not release this information to the public.

23. The particulars of JMS's business and contractual relationships with health systems, hospitals, and payors are likewise protected confidential business information.

24. The identities of JMS patients, in addition to being protected by other privacy laws (e.g., federal medical privacy laws like HIPAA), constitute confidential JMS business information.

25. JMS has not released any such confidential business information to the general public.

### Culnan's Employment With JMS

25.  Prior to late October 2022, Defendant Culnan was an employee of JMS, practicing burn and plastic surgery at JMS's Jackson, MS location. Culnan was employed with JMS under a written employment agreement. (See generally Pl.'s Ex. 1.)

27.  Pursuant to the Employment Agreement, Culnan would provide burn services (and other associated medical services) to patients in Mississippi on behalf of JMS.

28.  Among the essential and material terms of the Employment Agreement, Culnan was to dedicate his professional time to providing burn and reconstructive services on behalf of JMS. (Pl.'s Ex. 1 at 5(a).)

29.  The Employment Agreement also required Defendant Culnan to refrain from any acts which might injure, in any way, directly or indirectly, JMS's professional reputation. (Pl.'s Ex. 1 at ¶ 6.)

30.  Pursuant to his Employment Agreement, Defendant Culnan is prohibited from soliciting, directly or indirectly, or attempting to solicit any patients he treated while employed by JMS for 12 months following termination of the Agreement. (Pl.'s Ex. 1 at ¶ 27(b).)

31.  Pursuant to his Employment Agreement, Defendant Culnan is prohibited from soliciting, directly or indirectly, or attempting to hiring away any of JMS's employees for 24 months following termination of the Agreement. (Pl.'s Ex. 1 at ¶ 27(c).)

32.  Pursuant to his Employment Agreement, Defendant Culnan is expressly prohibited from interfering, directly or indirectly and whether for himself or as an agent of any kind for another person or entity, with Plaintiff's contractual relationships with any medical facility, institution, or payor at which or for which Defendant performed services before termination of the Employment Agreement. (Pl.'s Ex. 1 at ¶ 27(d).)

33. Culnan also agreed not to use or disclose any of JMS's Confidential Information, including information surrounding other JMS employees' compensation and/or terms of employment. (Pl.'s Ex. 1 at ¶ 16.)

Culnan's Surreptitious Plans to Raid JMS and<br>Ongoing Breaches of the Employment Agreement

34. In October 2022, JMS discovered that Defendant Culnan was attempting to gather certain information about JMS employees' pay and/or benefits in an effort to hire them away from JMS and join Culnan to work for a competing entity.

35. Upon information and belief, Defendant Culnan called at least one meeting of the midlevels with whom he worked while still employed by JMS in an effort to solicit them to leave JMS and work with Defendants instead.

36. Upon information and belief, Defendant Culnan assured several JMS employees that Defendants would match exactly the level of pay and benefits they enjoyed while JMS employees.

37. Upon information and belief, Defendant Culnan met with midlevels on at least one occasion to discuss plans to leave JMS and form or work for a competing entity.

38. Defendant Culnan was still a JMS employee at the time of these acts.

39. Upon information and belief, while still employed by JMS, Defendant Culnan—behind JMS's back—met with executives of hospitals/health systems and Mississippi government officials to discuss funding a burn center to compete with JMS.

40. On or about October 2022, Defendant Culnan's Employment Agreement with JMS was terminated.

41. Defendant Culnan has continued to attempt, directly and indirectly, to solicit and hire away JMS employees following the termination of his Employment Agreement.

42. Defendant Culnan then began providing burn and plastic surgery services for Defendant Mississippi Burn, a newly formed entity which he created on or about November 1, 2022.

43. Defendant Culnan formed or created Defendant MMM as a Mississippi limited liability company on November 2, 2022. Upon information and belief, MMM was created to aid in Culnan's scheme to unfairly compete with JMS.

44. Upon information and belief, Defendant Culnan has hired away at least five (and perhaps as many as seven) of the nine non-physician JMS employees that worked with Defendant Culnan while he was an employee at JMS Mississippi to work for him as employees of Mississippi Burn, MMM, or another related entity.

45. Upon information and belief, Defendant Culnan has, either directly or indirectly through other JMS employees he improperly recruited/solicited, obtained and/or retained confidential JMS data and/or material.

46. Upon information and belief, Defendants have used or intend to use such confidential information to operate a competing burn medical practice.

47. Upon information and belief, Defendants have improperly obtained confidential and/or proprietary information belonging to JMS, including policies, procedures, practice manuals, and other similar patient care materials, and have used and/or intend to use such materials to compete with JMS.

48. Upon information and belief, Defendants have, either directly or through JMS employees Defendant Culnan improperly recruited/solicited, solicited JMS patients in direct violation of his Employment Agreement.

Case 1:23-cv-00004-JRH-BKE   Document 1   Filed 01/09/23   Page 8 of 13

49. Upon information and belief, a former JMS midlevel directed at least one patient away from JMS to Mississippi Burn and Dr. Culnan and it is likely that many more were diverted.

### JMS's Claims against Defendants

50. Plaintiff hereby incorporates the allegations contained in Paragraphs 13-49 as if fully set forth here.

51. Defendant Culnan's solicitation of JMS employees began before Defendant Culnan's Employment Agreement was terminated. Defendant Culnan breached the non-solicitation provisions of his Employment Agreement, which survive termination of the Agreement, both before and after his termination.

52. JMS has expended considerable time, effort, and capital into recruiting, training, and retaining its employees, including developing and training midlevel providers in the specialized nature of JMS's practice, both in Mississippi and at its other locations, and developing its own evidence-based burn protocols and treatment procedures.

53. The non-solicitation provisions are reasonably necessary to protect JMS's interests.

54. JMS has and will suffer irreparable and continuing harm as a result of Defendant Culnan's improper solicitation of JMS employees and breach of his Employment Agreement.

55. Upon information and belief, Defendants have improperly solicited JMS patients.

56. JMS has expended and will continue to expend considerable time, effort, and capital to develop its patient base and referral sources, both in Mississippi and at its other locations. JMS has expended more than $75,000 on average in each of the last three years on marketing efforts to grow its Mississippi practice. Further, JMS derives millions of dollars in revenue each year from its practice in Mississippi, which is placed at jeopardy by Defendants' actions to damage

8

JMS's operations through misappropriation of its confidential information, diversion of its patient base, and theft of its employees.

57. As JMS's patient population is critical to its business and is the result of significant investment of JMS's resources, JMS has and will suffer irreparable and continuing harm if Defendant is permitted to solicit JMS patients in order to unfairly compete with JMS.

58. Upon information and belief, Defendants have improperly obtained and used and/or plan to use JMS confidential information, including policies, procedures, patient guides, and other materials.

59. JMS has expended considerable time, effort, and capital into developing and maintaining its policies, practices, patient guides and other materials attendant to JMS's delivery of world-class burn medical care to its patients.

60. JMS will suffer irreparable and continuing harm if Defendant is permitted to use JMS's confidential business information to directly compete with JMS.

61. Upon information, *while still a JMS employee*, Defendant Culnan interfered with and/or usurped JMS corporate opportunities by secretly meeting with hospital and government officials behind JMS's back in an effort to establish a practice to compete with JMS.

62. Engaging in any professional/business activities other than practicing medicine on behalf of JMS was a violation of Defendant Culnan's Employment Agreement.

63. By utilizing JMS contacts in an effort to create a competing practice for himself *while still a JMS employee*, Defendant Culnan improperly usurped JMS corporate opportunities, and Defendant(s) Mississippi Burn and/or MMM wrongfully seek to obtain the benefit of Defendant Culnan's conduct.

64. To remedy Defendant Culnan's material breaches of the Employment Agreement and prevent further breach, JMS is entitled to immediate, preliminary, and permanent injunctive relief.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

a. That the Court immediately issue temporary, preliminary, and permanent injunctive relief against Defendants, and that Defendants, individually and through any agents, representatives, servants, employees, attorneys, successors, and assignees, and all others in active concert or participation with Defendants be enjoined and restrained from:

   i. Soliciting JMS's patients;

   ii. Soliciting JMS's employees and employing JMS employees that Defendant improperly recruited while still a JMS employee himself or in violation of his Employment Agreement;

   iii. Using or disclosing any of JMS's confidential business information;

   iv. Interfering with JMS's contractual relationships with health systems, hospitals, and payors; and

   v. Breaching his Employment Agreement with JMS.

b. For an order prohibiting the use or disclosure of any JMS confidential information that Defendant has already obtained in breach of the Employment Agreement and requiring the return and/or destruction of all things created from or based upon that information;

c. That the Court award exemplary damages as provided by law;

    d. That the Court award Plaintiff its attorneys' fees and all other costs associated with this action pursuant to O.C.G.A. § 13-6-11 and/or the terms of the Employment Agreement; and

    e. That the Court award Plaintiff all other relief to which it is entitled and such other further relief as is just and proper.

Respectfully submitted, this __9th__ day of January, 2023.

                                                                                              */s/ Samuel J. Adams*
SAMUEL J. ADAMS
Georgia Bar No. 397520
KYLE WADDELL
Georgia Bar No. 676825
JOHN E. PRICE
Georgia Bar. No. 142012
FULCHER HAGLER LLP
Post Office Box 1477
Augusta, GA 30903-1477
(706) 724-0171
sadams@fulcherlaw.com
kwaddell@fulcherlaw.com
*Attorneys for Plaintiffs*

## **VERIFICATION OF S.M. ABU ZAHEED HASSAN, M.D.**

I, S.M. ABU ZAHEED HASSAN, M.D., a citizen of the United States and a resident of the State of Georgia, hereby declare under penalty of perjury that I am the CEO and sole shareholder of Plaintiff, Joseph M. Still Burn Center, Inc., that the facts recited herein of which I have personal knowledge are true and correct to the best of my knowledge, and that the facts recited herein of which I do not have personal knowledge I believe to be true based on information and/or documents available to me.

This __5th__ day of January, 2023.

_____
S.M. ABU ZAHEED HASSAN, M.D.,
JOSEPH M. STILL BURN CENTERS, INC.

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This is to further certify that I have on this day served on counsel of record by United States Mail, postage prepaid, addressed to the following counsel of record:

James S. Murray<br>
Turner Padget<br>
209 Seventh Street<br>
Third Floor<br>
Augusta, GA 30901

This  9th   day of January, 2023.

/s/ Samuel J. Adams
SAMUEL J. ADAMS
Georgia Bar No. 397520
KYLE WADDELL
Georgia Bar No. 676825
JOHN E. PRICE
Georgia Bar No. 142012
FULCHER HAGLER LLP
Post Office Box 1477
Augusta, GA 30903-1477
(706) 724-0171
sadams@fulcherlaw.com
kwaddell@fulcherlaw.com
*Attorneys for Plaintiffs*